**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WENDY JOEL ESTEVEZ, *on behalf of herself, FLSA Collective Plaintiffs, and the Class,*<br><br>                             Plaintiff,<br><br>             v.<br><br>CHINESE AMERICAN PLANNING COUNCIL<br>        HOME ATTENDANT PROGRAM INC.,<br>CPC TRIBECA CENTER INC.,<br>CPC HAP HOLDINGS, INC.,<br>CPC TENANT AND BUILDING SERVICES, INC.,<br>CHINESE-AMERICAN PLANNING COUNCIL, INC.,<br>and WAYNE HO,<br><br>                             Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, WENDY JOEL ESTEVEZ ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC., CPC TRIBECA CENTER INC., CPC HAP HOLDINGS, INC., CPC TENANT AND BUILDING SERVICES, INC., CHINESE-AMERICAN PLANNING COUNCIL, INC. (each individually a "Corporate Defendant" and, together, the "Corporate

Defendants"), and WAYNE HO (the "Individual Defendant" and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.  Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including unpaid overtime, due to off-the-clock work, (2) liquidated damages, and (3) attorneys' fees and costs.

2.  Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including unpaid overtime, due to off-the-clock work, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.  Corporate Defendants are all non-profit corporations which collectively operate the non-profit organization known as the "Chinese-American Planning Council" (or "CPC") under the control of Individual Defendants WAYNE HO. Defendants' CPC serves senior citizens and people with intellectual and/or physical developmental challenges throughout New York State ("Clients").

4.  Plaintiff, FLSA Collective Plaintiffs, Class Members are all current and former direct support professionals employed by Defendants and are all victims of Defendants' underpayment of wages, including overtime, due to time shaving. Defendants instituted a policy of only paying Plaintiff, FLSA Collective Plaintiffs, and Class Members for their scheduled hours as opposed to the hours that Defendants actually required them to work. At all relevant times, Defendants routinely and systematically failed to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they spent working for Defendants' Clients.  Additionally, Defendants

required Plaintiff, FLSA Collective Plaintiffs, and Class Members to work past their scheduled times until they are relieved from their duties by the next scheduled employee. Plaintiff, FLSA Collective Plaintiffs, and Class Members do not get paid by Defendants for the hours worked beyond their scheduled shift while waiting for their colleagues or another care taker to replace them, and take over the shift.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391, as Defendants' headquarters, where the policies and procedures giving rise to this action were set, is located at 1 York Street, 2nd floor, New York, NY 10013.

## PARTIES

7.      Plaintiff WENDY JOEL ESTEVEZ is a resident of Brooklyn, New York.

8.      Corporate Defendant CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC. is a domestic corporation organized under the laws of New York, with a headquarters located at 1 York Street, 2nd floor, New York, NY 10013.

9.      Corporate Defendant CPC TRIBECA CENTER INC. is a domestic corporation organized under the laws of New York, located at 1 York Street, 2nd floor, New York, NY 10013.

10.      Corporate Defendant CPC HAP HOLDINGS, INC. is a domestic corporation organized under the laws of New York, with a headquarters located at 150 Elizabeth Street, New York, NY 10012.

11.    Corporate Defendant CPC TENANT AND BUILDING SERVICES, INC. is a domestic corporation organized under the laws of New York, with a headquarters located at 150 Elizabeth Street, New York, NY 10012.

12.    Corporate Defendant CHINESE-AMERICAN PLANNING COUNCIL, INC. is a domestic corporation organized under the laws of New York, with a headquarters located at 150 Elizabeth Street, New York, NY 10012.

13.    Individual Defendant WAYNE HO is the President and Chief Executive Officer of all Corporate Defendants. WAYNE HO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. WAYNE HO exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, any of Defendants' employees could complain to WAYNE HO directly regarding any of the terms of their employments, and WAYNE HO would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensations, or terminating or hiring such employees. WAYNE HO exercises functional control over the business and financial operations of each of the Corporate Defendants.

14.    Defendants WAYNE HO and CHINESE-AMERICAN PLANNING COUNCIL, INC. collectively own and operate the Chinese-American Planning Council, a non-profit organization dedicated to providing a multitude of social and economic services to Chinese-American, immigrant, and low-income communities. One of these services is Defendants' personal home care services / home attendant program, which Defendants operate and manage

through the other Corporate Defendants. All the Defendants collectively operate this aspect of the Chinese-American Planning Council as a single integrated enterprise as follows:

    a.  Corporate Defendant  CHINESE-AMERICAN PLANNING COUNCIL, INC. is the parent company of Defendants' Chinese-American Planning Council and directly or indirectly controls all other Corporate Defendants named herein. *See* **Exhibit A**, Schedule R of Corporate Defendant CHINESE-AMERICAN PLANNING COUNCIL, INC.'s Form 990 for the Fiscal Year Ending June 30, 2022;

    b.  Corporate Defendant CHINESE-AMERICAN PLANNING COUNCIL, INC. has no direct controlling entity. *Id;*

    c.  Corporate Defendant CHINESE-AMERICAN PLANNING COUNCIL, INC. is the direct controlling entity of Corporate Defendants CPC HAP HOLDINGS, INC. and CPC TENANT AND BUILDING SERVICES, INC. *Id;*

    d.  Corporate Defendant CPC HAP HOLDINGS, INC. is the direct controlling entity of CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC. *Id;*

    e.  Corporate Defendant CPC TENANT AND BUILDING SERVICES, INC. is the direct controlling entity of CPC TRIBECA CENTER INC. *Id;*

    f.  Corporate Defendant CHINESE-AMERICAN PLANNING COUNCIL, INC. is the direct controlling entity of the entities that directly control Corporate Defendants CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC. and CPC TRIBECA CENTER INC. *Id.* Corporate Defendant CHINESE-AMERICAN PLANNING COUNCIL, INC.

therefore indirectly controls Corporate Defendants CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC. and CPC TRIBECA CENTER INC;

g. Corporate Defendant CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC.'s primary purpose is to provide Defendants' home care services. *Id;*

h. Corporate Defendant CPC TRIBECA CENTER INC.'s primary purpose is to manage Defendants' home attendant program. *Id.* Therefore, Corporate Defendant CPC TRIBECA CENTER INC.'s primary purpose is to manage the home attendant program which is provided by Corporate Defendant CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC.

i. Corporate Defendant CPC TENANT AND BUILDING SERVICES, INC. is the direct controlling entity of the entity that manages the home attendant program operated by the entity directly controlled by Corporate Defendant CPC HAP HOLDINGS. *Id.*

j. Home health aides and home attendants employed by Corporate Defendant CHINESE AMERICAN PLANNING COUNCIL HOME ATTENDANT PROGRAM INC., including Plaintiff, are paid by Corporate Defendant CHINESE-AMERICAN PLANNING COUNCIL, INC for the work they perform for Corporate Defendant CHINESE AMERICAN PLANNING COUNCIL HOME ATTNDANT PROGRAM INC. *See* **Exhibit B**, Plaintiff's

paystubs, issued by Corporate Defendant CHINESE AMERICAN PLANNING COUNCIL, INC.

k.  Defendants provide a list of all supervisors, managers, directors, and administrators within the Chinese-American Planning Council at https://www.cpc-nyc.org/supervisors. Defendants have a "Centralized Administration" with 1 payroll administrator, John Yuen, who oversees the payroll for all of Defendants' employees. *See* **Exhibit C**, Pages 5-6.

l.  Individual Defendant WAYNE HO is the President and Chief Executive Officer of all Corporate Defendants.

15. All the Defendants are appropriately named herein through the theory of a "single integrated enterprise". The Corporate Defendants share: (i) common ownership by Defendants WAYNE HO and CHINESE-AMERICAN PLANNING COUNCIL, INC., (ii) interrelation of operations as shown through Defendants' use of a centralized administration, (iii) centralized control of labor relations as shown through Defendants' use of a centralized administration and centralized payroll department, and (iv) common management by Individual Defendant WAYNE HO.

16. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

17. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members had an employment relationship with Defendants under the FLSA and the NYLL.

18. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former direct support professionals, home attendants, and home health aides employed by Defendants on or after the date that is six (6) years before the filing of the Complaint ("FLSA Collective Plaintiffs").

20.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs have been and are similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs for their proper wages, including overtime, due to a policy of time-shaving. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

21.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

22.    Plaintiff brings claims for relief pursuant to the Federal Rule of Civil Procedure ("F.R.C.P.") 23, on behalf of all current and former direct support professionals, home attendants, and home health aides employed by Defendants on or after the date that is six (6) years before the filing of the Complaint (the "Class" or "Class Members").

23.    Class Members are readily ascertainable. The number and identity of Class Members are determinable from the records of Defendants. The hours assigned and worked and the position held may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

24.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

25.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subjected to the same corporate practices of Defendants, including (i) failing to pay wages, including and overtime compensation, due to time-shaving (ii) failing to provide proper wage and hour notices upon hiring and as required thereafter pursuant to the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Members. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures by Defendants.

26.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation as well as employment litigation and have previously represented plaintiffs in wage and hour cases.

27.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a)    Whether Defendants employed Plaintiff and Class Members within the meaning of the New York law;

b)    What were and are the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c)    Whether Defendants properly notified Plaintiff and Class Members of their hourly rate and overtime rate;

d)    Whether Defendants paid Plaintiff and Class Members the overtime premium at one-and-one-half times their regular hourly rates for all hours worked in excess of forty (40) each workweek;

e)    Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, including overtime, due to off-the-clock work;

f)    Whether Defendants provided to Plaintiff and Class Members proper wage and hour notices at date of hiring as required under the New York Labor Law; and

g)    Whether Defendants provided proper wage statements informing Plaintiff and Class Members of their proper overtime rate of compensation and other

information required to be provided on wage statements with each payment of wages, as required under the New York Labor Law.

**STATEMENT OF FACTS**

30.     On or around August 19, 2014, Plaintiff WENDY JOEL ESTEVEZ was hired by Defendants to work as a Direct Support Professional / Home Attendant for Defendants' home attendant program. Defendants terminated Plaintiff's employment on or around February 20, 2024.

31.     Throughout his employment, Plaintiff was assigned by Defendants to work at the home of Defendants' client ("Client"), to attend to Client's health and household. Plaintiff's duties as a Home Attendant included, but were not limited to, general personal care of Client, cooking and preparing Client's meals, cleaning Client's household, and transporting Client around to various destinations.

32.     To obtain the position, Plaintiff interviewed at Defendants' office and was then provided with several onboarding documents. Defendants then assigned him to work for Client.

33.     Defendants also provided Plaintiff with a handbook instructing him on his duties, and Defendants' expectations from him.

34.     Defendants controlled Plaintiff scheduling, including Plaintiff's working hours and paid and unpaid vacations, as well as all benefits provided to Plaintiff. If Plaintiff needed to leave early or make any changes to his schedules, Plaintiff would be required to discuss it with the Defendants - not the Client.

35.     Not only were Defendants in charge of Plaintiff's schedule, Defendants also set up and monitored Plaintiff's clocking-in and clocking-out. Defendants required Plaintiff to clock-in by a number set up by Defendants to get connected to Defendants' telephonic automated clocking system.

36.     In accordance with Defendants' policy, if Plaintiff needed to call out sick, he would be required to request the time off from Defendants, not the Client.

37.     Plaintiff also discussed his payrates and pay raises directly with Defendants, and not the Client.

38.     Plaintiff's paystubs are issued by Defendants. Additionally, if Plaintiff found any mistakes regarding his paid wages, Plaintiff was required to contact Defendants, not the Client.

39.     From the beginning of his employment and until January 2024, Plaintiff was compensated at an hourly rate of seventeen dollars ($17.00) per hour. From January 2024 and until the end of his employment, Plaintiff was compensated at an hourly rate of nineteen dollars ($19) per hour.

40.     From the beginning to his employment and until January 2020, Plaintiff was scheduled to work five (5) days per week, from 8:00 a.m. to 8:00 p.m. for a total of sixty (60) hours per week. From January 2020 and until January 2023, Plaintiff was scheduled to work seven (7) days per week from 8 a.m. to 8:00 p.m. for a total of eighty-four (84) hours per week. And from January 2024, and until the end of his employment Plaintiff was scheduled to work four (4) days per week from 8 a.m. to 8:00 p.m. for a total of forty-eight (48) hours per week.

41.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members were required to clock in and out for their shifts using Defendants' inherently problematic clocking system. Defendants required Plaintiff, FLSA Collective Plaintiffs and Class Members to use their assigned client's phone to clock in and out by calling a phone number on which Defendants set up as their timeclock system. This system fails to capture all work time upon an employee's arrival because Defendants' clients never have their phones ready to clock in the employees at the moment they arrive. Instead, employees must wait at a client's site until the physically or mentally disabled

client is able to find their phone, locate Defendants' clock-in automated number, and call Defendants to clock-in on the employees' behalf. Defendants' system is counterproductive and unfair to Defendants' employees.

42.     Further, Defendants' entire compensation system depends fully and solely on the availability of a functioning and available phone in the senior citizen's or physically and/or mentally disabled person's home. Not only is a functioning phone device not always available in Defendants' clients' homes, but access to it is sporadic. In fact, Plaintiff, FLSA Collective Plaintiffs and Class Members often face resistance from clients when attempting to use Clients' phone to clock-in. Clients very often have pre-paid phones that are not functioning, not registered with Defendants, or not charged. Moreover, because Plaintiff, Class Members and FLSA Collective Plaintiffs do not have control over the clock-in process, every day they are delayed for at least ten (10) minutes upon their arrival at work. When they arrive at Clients' homes, they spend at least ten (10) minutes daily helping Clients locate their phone and calling Defendants to clock Plaintiff, FLSA Collective Plaintiffs and Class Members in.

43.     Once per week, Plaintiff transports his Client to doctors' clinics, hospitals, urgent care facilities, or Emergency Rooms, and works up to two (2) hours beyond his scheduled shift, as it is practically impossible for Plaintiff to leave Client unaccompanied in a health facility. Defendants do not compensate Plaintiff for the hours worked beyond his scheduled shift, even if the Client clocks him out after his scheduled shift. Defendants similarly failed to compensate FLSA Collective Plaintiffs and Class Members for all hours worked beyond their scheduled shifts.

44.     Additionally, at least three times per week, Plaintiff works for twenty (20) minutes beyond his scheduled as Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to work until they are relieved from their duties by the next scheduled employee.

However, Defendants failed to compensate Plaintiff, Collective Plaintiffs, and Class Members for all time they worked beyond their schedules. Moreover, even if the subsequent shift person is on time, the two individuals need to swap off and discuss the status of their shared Client and any outstanding care-taking duties for the following shift. Plaintiff, FLSA Collective Plaintiffs, and Class Members do not get paid by Defendants for the hours worked beyond their scheduled shift while waiting for their colleagues to replace them and take over responsibility of the Client.

45.    Defendants' system of only paying for scheduled hours as opposed to the actual hours worked by Plaintiff, FLSA Collective Plaintiffs, and Class Members, is inherently unfair to direct support professionals and in no way protects their Federal and New York State rights.

46.    Defendants are aware of the shortcomings of its system and the constant difficulties faced by Plaintiff, FLSA Collective Plaintiffs, and Class Members.

47.    Additionally, Defendants did not provide Plaintiff with proper wage statements at all relevant times. Similarly, Class Members did not receive proper wage statements, in violation of the NYLL.

48.    Defendants never provided Plaintiff with a proper wage notice as required by the NYLL. Similarly, Class Members were never provided with proper wage notices.

49.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the

wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

50.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

51.    Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

52.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

53.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

54.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See Mills v. Mills, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").1

55.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. See McGauran v. Soc. Sec. Comm'n, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

---

1 It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); Coward v. Zurich Am. Ins. Co., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

56.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

57.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

58.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

59.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

60.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

61.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits. All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

62.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

63.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACTON

## ON BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS

64.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

65.     At all relevant times, Defendants was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

66.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

67.      At all relevant times, Defendants had gross annual revenues in excess of $500,000.00.

68.     At all relevant times, Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages, including overtime, in the lawful amount for all hours worked due to a policy of time-shaving.

69.     Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this Complaint to set forth the precise amount due.

70.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

71.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (*i.e.*, double) damages pursuant to the FLSA.

72.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time shaving, and an equal amount as liquidated damages.

73.     Plaintiff and FLSA Collective Plaintiffs are also entitled to an award of their reasonable attorneys' fees and costs pursuant to the FLSA.

**COUNT II**

**VIOLATION OF THE NEW YORK LABOR LAW**

**ON BEHALF OF PLAINTIFF AND CLASS MEMBERS**

74.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

75.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

76.     At all relevant times, Defendants had a policy and practice of time-shaving that failed to pay Plaintiff and Class Members for all hours worked.

77.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their proper overtime compensation at rates of not less than one and one-half times their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek.

78.     Defendants failed to provide a proper wage and hour notice, on the date of hiring and annually, to all non-exempt employees in direct violation of the New York Labor Law.

79.     Defendants failed to provide proper wage statements with every payment issued to Plaintiff and Class Members, as required by New York Labor Law § 195(3).

80.     Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, including overtime hours, due to time shaving, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid compensation due to time-shaving under the FLSA and NYLL;

d. An award of unpaid minimum wages due under the NYLL;

e. An award of unpaid overtime compensation due under the FLSA and the NYLL;

f. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g.  An award of statutory penalties as a result of Defendants' failure to comply with wage statement and notice requirements under the NYLL;

h.  An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA and NYLL;

i.  An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

j.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiff as a Representative of the Class;

m.  Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: September 18, 2024                          Respectfully submitted,

                          By:     */s/ C.K. Lee*
                                  C.K. Lee, Esq.

                                  **LEE LITIGATION GROUP, PLLC**

                                  C.K. Lee (CL 4086)
                                  Anne Seelig (AS 3976)
                                  148 West 24th Street, 8th Floor
                                  New York, NY 10011
                                  Tel.: 212-465-1188
                                  Fax: 212-465-1181
                                  *Attorneys for Plaintiff,*
                                  *FLSA Collective Plaintiffs,*
                                  *and the Class*